MID–AMERICA REAL ESTATE &
INVESTMENT CORPORATION,
Plaintiff and Appellant,

v.

Dwight D. LUND, Gerald A. Horning,
and Michael R. Possehl, Defendants
and Appellees.

BENCHMARK COMPUTER SYSTEMS,
INC., Dwight D. Lund, Gerald A. Horn-
ing, and Michael R. Possehl, Plaintiffs
and Appellees,

v.

MID–AMERICA REAL ESTATE &
INVESTMENT CORPORATION,
Defendant and Appellant.

Civ. Nos. 10580, 10581.

Supreme Court of North Dakota.

June 28, 1984.

Edmund G. Vinje II, of Vinje Law Office, Fargo, for plaintiff and appellant Mid-America Real Estate & Investment Corporation.

Patricia R. Ellingson, of Nilles, Hansen, Magill & Davies, Fargo, for defendants and appellees.

VANDE WALLE, Justice.

Mid-America Real Estate and Investment Corporation (Mid-America) appeals from a judgment of the District Court of Cass County dismissing Mid-America's claims against the three individual defendants, Dwight Lund, Gerald Horning, and Michael Possehl. We reverse and remand for entry of judgment consistent with this opinion.

Lund, Horning, and Possehl were officers and directors of Benchmark Computer Systems, Inc., a North Dakota corporation. During the summer of 1979, the corporation was seeking a new location for its office in Fargo. On July 31, 1979, Lund signed an offer to purchase property known as the PCA building in Fargo from Mid-America. The purchaser was listed as "Benchmark Computer Systems of North Dakota." [1] The total purchase price was to be $242,500, with $1,000 earnest money accompanying the offer to purchase and an additional $23,000 in earnest money to be paid upon acceptance of the offer by Mid-America. The offer was accepted by Mid-America on August 9, 1979. The additional $23,000 earnest money remained unpaid, however, due to a disagreement over payment of interest on the earnest money. On December 17, 1979, Lund, Horning, and Possehl signed a promissory note for $24,000 in lieu of immediate cash payment of the earnest money to Mid-America. The note bore no interest and was due May 1, 1980, the date which had been set for Benchmark to take possession of the PCA building.

Benchmark subsequently encountered financial difficulties and informed Mid-America that it would be unable to go through with the purchase. Mid-America brought

---

1. It was adduced at trial that there was no entity entitled "Benchmark Computer Systems of North Dakota." The trial court found as fact that this designation on the offer to purchase was a mistake, and that the parties intended that the purchaser was to be Benchmark Computer Systems, Inc.

suit against Lund, Horning, and Possehl on the promissory note. They answered, alleging that the note was executed on behalf of the corporation, not individually, and that there was no consideration for the note if they did sign in their individual capacities. Benchmark, Lund, Horning, and Possehl brought a separate action against Mid-America claiming that Mid-America had breached the agreement, and Mid-America counterclaimed for the earnest money.

The cases were consolidated and tried to the court without a jury. The court found that Benchmark had anticipatorily breached the agreement, that Lund, Horning, and Possehl had signed the note as representatives of Benchmark, not in their individual capacities, and that, had they signed in an individual capacity, there would have been no consideration for the note. The court dismissed Benchmark's claims against Mid-America and Mid-America's claims against the three individual defendants, and awarded Mid-America judgment in the amount of $23,000 against Benchmark only. Mid-America filed this appeal.

Mid-America contends that, pursuant to Section 41–03–40, N.D.C.C. [U.C.C. § 3–403], the three individuals are personally obligated on the note. Section 41–03–40(2)(a) provides:

"2. An authorized representative who signs his own name to an instrument:

"a. Is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity."

In *Farmers & Merchants National Bank of Hatton v. Lee*, 333 N.W.2d 792 (N.D. 1983), we upheld a summary judgment against an individual, holding that one who signs an instrument which does not indicate his representative capacity or name

his principal is personally liable on the instrument.

Benchmark's name does not appear anywhere on the note, and there is no other indication on the face of the note that Lund, Horning, and Possehl signed in a representative capacity. The trial court, relying on *Ristvedt v. Nettum*, 311 N.W.2d 574 (N.D.1981), allowed introduction of parol evidence regarding the parties' intent[2] and found that Lund, Horning, and Possehl had intended to sign the note as representatives of Benchmark, not as individuals. *Ristvedt*, however, is clearly distinguishable from the instant case. In *Ristvedt, supra*, 311 N.W.2d at 576, a purchaser had signed a sales agreement and promissory note in the following manner:

"/s/ *Nettum Commodity Trading Inc.*
"Galen Nettum, Purchaser
"/s/ *Galen Nettum.*"

Because the name of the party purportedly represented (Nettum Commodity Trading, Inc.) appeared on the instruments, subsection (2)(b) of Section 41–03–40, N.D.C.C., was applicable. Subsection (2)(b) provides that an authorized representative who signs his own name to an instrument:

"b. Except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity."

We held that, under subsection (2)(b), parol evidence is admissible to prove that it was the parties' intent that the agent sign in a representative capacity. *Ristvedt, supra.*

■ We concluded in *Farmers & Merchants National Bank, supra*, that a wholly different situation is presented when the instrument neither names the principal nor

---

**2.** At the time this case was tried (February and May of 1983), our opinion in *Farmers & Merchants National Bank of Hatton v. Lee*, 333 N.W.2d 792 (N.D.1983), decided on May 12, 1983, would have been unavailable to the court and parties. We note that the case was cited in Mid-America's post-trial brief to the court, but was not discussed in the trial court's memorandum opinion.

indicates that the signature was made in a representative capacity, and parol evidence is not admissible in that situation to establish that the signature was made in a representative capacity:

" 'If, under 3–403(2)(a) [U.C.C.], the agent merely signs his own name, he is personally liable on the instrument, but his principal is not. Even if the person taking the instrument knows that the agent is signing in a representative capacity, the agent cannot introduce parol evidence to show that his signature was made for another.' " *Farmers & Merchants National Bank, supra,* 333 N.W.2d at 794 n. 1 [quoting White & Summers, *Uniform Commercial Code* § 13–4, at 493 (2d Ed.1980)].

The Official Comment to Section 3–403 of the Uniform Commercial Code also makes it clear that where the instrument does not name the principal or indicate representative capacity, the signature "personally obligates the agent and parol evidence is inadmissible under subsection (2)(a) to disestablish his obligation." U.C.C. § 3–403, Official Comment 3.

The differing results under subsections (2)(a) and (2)(b) of U.C.C. § 3–403 have been explained in White & Summers, Uniform Commercial Code § 13–5, at 496 (2d ed. 1980):

"When the plaintiff who sues the agent personally is one who dealt directly with the agent, and the signature either names the principal or indicates representative capacity, section 3–403(2)(b) permits the agent to introduce parol evidence of his agency status to avoid personal liability.... Evidently the Code draftsmen believed that anyone permitted to prove his agency by parol should offer as an entry fee some extrinsic evidence that he acted in a representative capacity. Accordingly, parol evidence is not admissible when the agent merely signs his own name but does not indicate either the fact of representation or the name of his principal." (Footnotes omitted.)

■ Subsection (2)(a) is, in effect, an extension of the general contract rule that a court may not consider extrinsic evidence to vary the language of an unambiguous contract. See §§ 9–07–02 and 9–07–04, N.D.C.C. If the name of the principal appears on the instrument or the signature indicates a representative capacity, it creates an ambiguity regarding the capacity of the signature. In this situation there is still a presumption of personal liability, but under subsection (2)(b) extrinsic evidence is admissible to establish representative capacity. Where the instrument neither names the principal nor indicates representative capacity, however, there is no ambiguity regarding the signature and extrinsic evidence is inadmissible under subsection (2)(a).

■ The appellees also contend that, pursuant to Section 9–07–07, N.D.C.C., the court could look to the written offer to purchase as evidence that the three individuals intended to sign as representatives of Benchmark. Section 9–07–07 provides:

"9–07–07. *Several contracts part of one transaction interpreted together.* —Several contracts relating to the same matters between the same parties and made as parts of substantially one transaction are to be taken together."

Section 41–03–19, N.D.C.C., is a similar provision specifically applicable to commercial paper:

"41–03–19. (3–119) *Other writings affecting instrument.*

"1. As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction, ..."

■ We conclude that these provisions, which codify general rules of contract law, do not permit consideration of extrinsic evidence to determine the capacity of a party's signature on a note, because the more specific provisions of Section 41–03–40, N.D.C.C., prohibit such consideration. In construing statutes, a special or more specific provision must prevail over

general provisions relating to the same subject matter, absent a manifestation of legislative intent to the contrary. Section 1-02-07, N.D.C.C.; *Bumann v. St. Paul Fire and Marine Ins. Co.*, 312 N.W.2d 459 (N.D.1981); *State v. Goetz*, 312 N.W.2d 1 (N.D.1981); *Johnson v. Haugland*, 303 N.W.2d 533 (N.D.1981). Section 41-03-40(2)(a), which provides that a person who signs an instrument which does not name his principal or indicate a representative capacity is personally obligated on the instrument, is a specific provision which prevails over the more general provisions of Sections 9-07-07 and 41-03-19.

◼ The appellees also contend that there is no consideration for the note if they signed in an individual capacity. The trial court found that if the note was an obligation of the three individuals, "it would fail for lack of consideration," and that the note "was intended to be in substitution of the $23,000 additional earnest money deposit." Section 9-05-10, N.D. C.C., provides: "A written instrument is presumptive evidence of a consideration." See also *Farmers & Merchants National Bank, supra; Schue v. Jacoby*, 162 N.W.2d 377 (N.D.1968). The burden of proving lack of consideration lies with the party seeking to invalidate the instrument. Section 9-05-11, N.D.C.C.; *Farmers & Merchants National Bank, supra.* The trial court in this case found that the appellees had met their burden of proving lack of consideration.

◼ We believe that this case presents a classic, textbook example of consideration. Section 71(4) of the Restatement (Second) of Contracts provides:

"(4) The performance or return promise may be given to the promisor or to some other person. It may be given by the promisee or by some other person."

The comments and illustrations make it clear that consideration may consist of performance for the benefit of a third party:

"e. *Consideration moving from or to a third person.* It matters not from whom the consideration moves or to whom it goes. If it is bargained for and given in exchange for the promise, the promise is not gratuitous.

. . . . .

"15. A makes a promissory note payable to B in return for a payment by B to C. The payment is consideration for the note." Restatement (Second) of Contracts § 71, comment e,. illustration 15 (1981).

It is not essential that the consideration flow directly to the promisor, and the promise is enforceable if there is a benefit or advantage to the promisor, or some loss or detriment to the promisee. See, *e.g., Wolfe v. Eaker*, 50 N.C.App. 144, 272 S.E.2d 781 (1980), *cert. denied*, 302 N.C. 222, 277 S.E.2d 69 (1981); *Bowman v. McDonough Realty Co., Inc.*, 143 Ga.App. 128, 237 S.E.2d 647 (1977); *Wortham v. Lake Jackson State Bank*, 435 S.W.2d 612 (Tex.Civ. App.1968). *See generally* Section 9-05-01, N.D.C.C.; 1 A. Corbin, *Corbin on Contracts* §§ 121, 122 (1963); 1 S. Williston, *A Treatise on the Law of Contracts* § 113 (3d ed. 1957). Mid-America's forebearance from attempting to sell the property to other parties prior to the date that Benchmark was scheduled to take possession constituted adequate legal consideration for the promissory note.[3]

The judgment of the district court is reversed, and we remand for entry of judg-

---

**3.** We find no incongruity in holding that a court may look outside the written agreement to find consideration, but may not look beyond the face of a note to determine the capacity of a signature made without any indication of representative capacity. This is but one of many instances in which evidence is admissible for one purpose but not for another. We note particularly the policy considerations underlying Section 41-03-40, N.D.C.C. [U.C.C. § 3-403], which include a desire to make negotiable instruments definite and certain on their face. We are also aware that promissory notes rarely contain recitals of consideration, and in many cases are executed in conjunction with other agreements. If we were to hold that courts could look to other agreements to determine the capacity of an unambiguous signature when consideration could be substantiated only by looking outside the instrument itself, it would create an exception which would swallow the general rule.

ment in favor of Mid-America on the note against Lund, Horning, and Possehl.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.