Robert L. WANG, Plaintiff
and Appellant,

v.

Victor J. WANG and Albert Schramm,
Defendants and Appellees.

No. 14850.

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1985.

Decided Sept. 24, 1986.

Bryce Flint of Jackley & Flint, Sturgis, for plaintiff and appellant.

Donald E. Covey, Winner, for defendant and appellee Schramm.

MORGAN, Justice.

Plaintiff, Robert L. Wang (Robert), appeals from a judgment entered on a jury verdict in favor of defendant Albert Schramm (Schramm) in Robert's suit to recover on a promissory note. Robert raises three issues: (1) the trial court improperly admitted parol evidence regarding the parties' intentions at the time they executed the note and assignment documents; (2) the trial court erred in giving certain instructions; and (3) the trial court erred in refusing to recuse itself prior to trial. We reverse and remand.

One of the documents that is the subject of this litigation is a promissory note executed by Victor Wang (Victor) to the Rosebud Federal Credit Union (RFCU) on January 18, 1978, in the amount of $97,425.09 with interest at nine percent per annum and due and payable on January 18, 1979. Victor is Robert's brother.

At this point we must digress for some background information. The RFCU was affiliated with the Farmer's Cooperative Oil Company (Coop) of Winner, South Dakota. There was an agreement between these entities that the Coop would guarantee patrons' notes to RFCU to the extent that the proceeds were used for Coop's purchases. This agreement had been formalized in writing and the practice was that after a note was signed by the patron, the Coop would co-sign the note. Schramm, an officer in both organizations, testified that after the patron had signed the note on the RFCU side of the office it would come to the Coop. The usual procedure would be for Schramm to first sign and then a stamp bearing the words:

"Farmer's Cooperative Oil Association of Winner by ⸺"

would then be affixed over his signature by someone else to designate the Coop as the comaker. There was no other notation on the instrument to indicate that the Coop was anything but a comaker on the note. Furthermore, it appears that in most instances, the patron-comaker was not even aware of the Coop's action until he would receive the cancelled instrument after it was discharged. In this instance, however, the stamp was not affixed to Victor's note and Schramm's signature as comaker was left bare.

The note was executed as a renewal of Victor's obligation under a prior note that was due and, in addition, Victor obtained additional funding to repair his equipment in preparation for a sale. The note was secured by financing agreements on various items of Victor's property and when the sale was completed the net proceeds were apparently deposited in an escrow account with the RFCU. Some of the property apparently was not sold, but was traded off, or was not otherwise accounted for. RFCU permitted Victor to pay out a considerable part of the escrow account for other obligations. On January 18, 1979, when the note became due, Victor was unable to meet his obligation. On demand by RFCU, the Coop paid $43,344.00 under the terms of the guaranty agreement previously discussed.

Robert first became involved when he was contacted at his home in Sturgis by Schramm who was looking for Victor to discuss the delinquent note. Robert indicated some interest in acquiring some of the collateral listed on RFCU's security agreement that had not been disposed of at Victor's sale. On July 3, 1980, Robert traveled to Winner and entered into negotiations with Larry Meiners (Meiners), the manager of RFCU, that culminated in an agreement to sell Robert the note and security agreements for the sum of $8,000.00. An assignment agreement was prepared that same day by a local attorney who had not even seen the note. Schramm, as president of the board of directors of RFCU, was called to the attorney's office to sign the assignment agreement on behalf of RFCU. He did so without reading the assignment or viewing the note. Meiners,

was also present and signed as a witness. Robert paid the $8,000.00, took his note and assignment, returned to Sturgis, and shortly thereafter made demand upon Schramm as comaker to pay the principal and interest then claimed due on the note in the amount of $106,193.33. This was obviously the first time Schramm was made aware of his precarious position. The RFCU sought to secure a cancellation of the assignment by refunding the $8,000.00 to Robert. He refused and this suit followed.

Schramm interposed a number of defenses by answer and by motion to amend at the close of all the testimony. The trial court ultimately instructed the jury on three defenses: (1) signature in a representative capacity; (2) unjustifiable impairment of collateral; and (3) lack of mutuality with respect to the assignment by reason of mistake of fact or mistake of law. The jury returned a verdict in favor of Schramm.

The various aspects of the pleadings and trial will be included where pertinent in the discussion of the issues raised by Robert, which were three in number, as follows: (1) Whether the trial court committed reversible error by allowing parol evidence to be considered by the jury regarding the parties' intentions at the time they executed the note and assignment documents? (2) Whether the trial court committed reversible error in giving Instructions 6, 9 and 10 to the jury and denying Robert's Proposed Instructions 1, 2, 3 and 4? (3) Whether the trial court committed reversible error in refusing to recuse itself from the case prior to trial? Because issues (1) and (2) are clearly related and intertwined, they will be discussed conjunctionally. Issue (3) will be dealt with separately.

Robert brought suit on the note by virtue of the assignment. His first issue relates to admission of parol evidence regarding the intentions of the parties at the time of the execution of both instruments. His second issue relates to jury instructions in relation to both instruments. For the purpose of clarity, we will first address those issues with respect to the promissory note and then with respect to the assignment.

The issues related to the promissory note all fall within the purview of the Uniform Commercial Code, particularly Chapter 57A–3, Commercial Paper. Robert first argues that Schramm is personally obligated on the note under the provisions of SDCL 57A–3–403(2) which provides, in pertinent part:

(2) An authorized representative who signs his own name to an instrument (a) Is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity. . . .

Inasmuch as Schramm's signature on the note was "bare," *i.e.*, without any showing that he signed in a representative capacity, Schramm was indeed personally liable as a comaker. On this point, Robert proposed an instruction: "A signature may be made by an agent or other representative, however, an authorized representative who signs his name to an instrument is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity." This proposed instruction accurately sets out the essence of SDCL 57A–3–403(2). In rejecting Robert's proposed instruction, the trial court gave an instruction which exactly stated Robert's proposed instruction but added:

However, a person signing a note, without indicating in the note that he is signing in a representative capacity, is not personally or individually liable on the note if the person in whose favor the note is drawn has knowledge that the signer has signed in a representative capacity, or the person in whose favor the note is drawn has required or requested the person to sign in a representative capacity.

■ We agree with Robert that the trial court erred in giving its Instruction 6 and rejecting Robert's Proposed Instruction 1. Where the instrument does not name the principal or indicate the representative ca-

pacity, the signature of an agent personally obligates the agent and parol evidence is inadmissible to disestablish his obligation. *Mid-America Real Estate & Inv. Corp. v. Lund,* 353 N.W.2d 286 (N.D.1984). In another similar case, the signer of a note was held personally liable on a promissory note where his signature alone was on the note and where there was no indication on the note that the signer had signed the note in a representative capacity, even though he contended the note was actually an obligation of his corporation. *Farmers & Merch. Nat. Bank of Hatton v. Lee,* 333 N.W.2d 792 (N.D.1983).

■ The objectionable part of Instruction 6 states, in effect, that Schramm would not be personally liable to the RFCU on the note drawn to RFCU if RFCU had knowledge that he signed in a representative capacity or if RFCU had required or requested him to sign in a representative capacity. We grant that there is some authority that, *in an action between the original parties to the note,* the intention to bind the principal instead of the agent may be relevant. In this case, however, the action is brought by a subsequent holder, not by an original party. We, therefore, do not reach that specific issue at this time. It is our holding that under the circumstances of this case and the provisions of SDCL 57A-3-403(2) that, as between Schramm and the Coop, Schramm was personally liable and the latter part of the trial court's instruction was erroneous.

■ Robert next claims error predicated on the admission of parol evidence relating to Schramm's signature on the note. While it is erroneous to admit parol evidence solely for the purpose of showing Schramm's representative capacity, such evidence is admissible to show Schramm's accommodation character in the transaction by virtue of the provisions of SDCL 57A-3-415(3). That statute provides:

(3) As against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible to give the accommodation party the benefit of discharges dependent on his character as such. *In other cases the accommodation character may be shown by oral proof.*

(Emphasis added.) It will be noted that before an accommodation party may show his accommodation character by parol evidence, the holder of the note must be shown not to be a holder in due course. Robert does not qualify as a holder in due course as defined in SDCL 57A-3-302(1). The face of the note reflected a maturity date long prior to the assignment date and Robert had notice that the note was overdue. Furthermore, the trial court found, as a matter of law, that Robert was not a holder in due course and Robert raises no issue on appeal concerning the trial court's ruling in that respect. Therefore, under the above statute, Schramm is entitled to introduce parol evidence to establish the accommodation character of his signature as opposed to establishing his representative character.

A showing of Schramm's accommodation status is essential to his defense of unjustifiable impairment of collateral. The trial court instructed the jury that to the extent that RFCU, without Schramm's consent, unjustifiably impaired any collateral, Schramm would be discharged. This appears to be an adequate statement of SDCL 57A-3-606(1) which states, in pertinent part:

(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

. . . .

(b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

There was evidence adduced by Schramm to support the giving of the instruction, including dissipation of escrowed funds and missing assets unaccounted for. Robert had no objection to the court's Instruction 11 on the issue of unjustifiable impairment in the form in which it was given to the jury.

We now examine the issues with respect to the assignment. The trial court instructed the jury by Instructions 9 and 10 on the defense of lack of mutuality in the execution of the assignment of the note from RFCU to Robert. Instruction 10 was merely a general instruction on the law of mutuality and the effect of the lack thereof by virtue of mistake of law or of fact. Instruction 9, however, was the meat cleaver—the court instructed the jury as follows:

If you find that Albert Schramm co-signed the note in his individual capacity, you must then address yourselves to the defense of Albert Schramm that the contract assigning the note to Robert Wang was not a.mutual agreement of the parties and that the obligation of Albert Schramm as a co-signer was not to be transferred to Robert L. Wang.

Albert Schramm can use this defense, namely that there was lack of mutual agreement by virtue of a mistake of fact or a mistake of law, only if you find that the Federal Credit Union offerred (sic) to place Robert L. Wang in the same position as he was in prior to the entry of the assignment agreement.

Robert's objection to the giving of the instruction was two-fold. Schramm, not being a party individually to the assignment, did not have standing to raise the defense and RFCU, the other party (other than Robert) to the document, has not sought intervention nor has it been joined.[1] The trial court's response to the objection acknowledged that Schramm was not a party individually and that he had executed the agreement on behalf of the RFCU, but opined that it is difficult to believe that Schramm, even in his representative capacity, would have signed the agreement had he known that he would then be personally liable on the note. The trial court also

noted that under the law the other party must also be given an opportunity to get back to the same position.[2]

The term "standing" or "standing to sue" has been variously applied in diverse situations and appears to have different limitations and exceptions peculiar to the situation where it is applied. For instance, in federal courts under the requirements of Article III of the United States Constitution, plaintiff must show "standing." The issue of standing is oft raised in actions where a plaintiff seeks to enforce legislation, *e.g.*, anti-trust violations under § 4 of the Clayton Act. *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 513 F.Supp. 1100, 1158, n. 70 (E.D.Pa.1981).

■ In South Dakota, a taxpayer or elector has standing to maintain a proceeding to restrain a public officer from the performance of an illegal act without necessity that he show special interest or injury. *State v. Youngquist*, 69 S.D. 423, 11 N.W.2d 84 (1943) (this is an exception to the rule in many other jurisdictions). Standing is established through being a "real party in interest" and it is statutorily controlled. SDCL 15–6–17(a) begins: "Every action shall be prosecuted in the name of the real party in interest." We therefore view Robert's objection to lack of standing to mean that Schramm was not a real party in interest to the assignment document and that lacking such status Schramm could not raise the issue of lack of mutuality due to mistake of law or fact as a defense to his personal obligation on the note which was the subject of the assignment. We agree with his objection. Schramm, in his individual capacity, would not be a real party in interest, and is not authorized by statute to commence an action to rescind the agreement between RFCU and Robert. "[M]erely because one may benefit by the result in litigation does

---

**1.** Schramm attempted to third-party in both Coop and RFCU. Robert resisted and we can find no record of the trial court's decision. It was obviously denied, however, as neither ever appeared. Schramm did not try to show that RFCU was an indispensable party under SDCL 15–6–19(a).

**2.** In turn, Robert also raised the same objection of standing to Instruction 10 as he did to Instruction 9.

not make him 'a real party in interest' " *Armour Pharmaceutical Co. v. Home Insurance Co.*, 60 F.R.D. 592, 594 (N.D.Ill. 1973).

In an action commenced in his own name by the president and sole stockholder of a car-leasing corporation, alleging that the corporation was entitled to lease space in an airport terminal, the Kentucky Supreme Court sustained the trial court's dismissal of the action. *Miller v. Paducah Airport Corp.*, 551 S.W.2d 241 (Ky.1972). The decision pointed out that as between the corporation and the individual there is a difference with a definite distinction, and concluded that the corporation is a separate and distinct entity from the individual. Finally, the court stated: "The real-party-in-interest doctrine is salutary in that it protects a defendant from again being harrassed for the same cause." *Id.* at 243. With this reasoning we agree.

If Schramm does not have the right under SDCL 15–6–17 to bring an action to rescind the agreement on the grounds of mistake of fact or mistake of law, *a fortiori*, he has no right to raise such a defense. Therefore, the defense raised by Instructions 9 and 10 was a sham and clearly in error. Apparently, Schramm's counsel also agrees with this conclusion. In any event, he did not argue that the trial court did not err, nor did he present any authority to support the trial court's instruction. Rather, he argues that any error was not prejudicial because Robert had not shown that the jury might and probably would have returned a different verdict. We think that Schramm has misunderstood our prior holdings in that regard.

In *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114 (S.D.1977), we did say that one "who seeks to set aside a civil verdict because of an incomplete or ambiguous instruction must establish that it was prejudicial [citation omitted], i.e., that under the evidence, the jury might have, and probably would have, returned a different verdict if a correct instruction had been given." *Id.* at 119.

In *Lytle v. Morgan*, 270 N.W.2d 359 (S.D.1978), with respect to the trial court's failure to give a proposed instruction, we said: "The burden is on the plaintiff to show not only error but also prejudicial error to the effect that under the evidence, the jury might and probably would have returned a different verdict if plaintiff's instructions had been given." *Id.* at 362.

In *Ryken v. Blumer*, 307 N.W.2d 865 (S.D.1981), another case where the trial court had failed to give a proposed instruction, we said:

Generally, a trial court's refusal to give a requested instruction setting forth the applicable law constitutes prejudicial error. [citation omitted] The burden is on appellant, however, "to show not only error but also prejudicial error to the effect that under the evidence, the jury might and probably would have returned a different verdict if (the proposed) instructions had been given."

*Id.* at 869 (quoting *Lytle*, 270 N.W.2d at 362). In each of these cases we also said: That jury instructions must be considered together in determining whether prejudicial error exists.

■ The bottom line is that we are not going to upset a civil verdict for minor errors in the trial court's instructions where, in viewing all the instructions, we are of the opinion that the flaw was not prejudicial.

We are not presently reviewing requested instructions not given; nor are Instructions 9 and 10 ambiguous or incomplete. Instruction 9 was an incorrect statement of the law. It was badly flawed. Instruction 10 lent Instruction 9 an air of authority, but was wholly inappropriate to this case. The instructions gave Schramm a complete defense and Schramm's counsel says that was not prejudicial. We do not agree.

■ In summation, on the first two issues, we are of the opinion that the trial court erred in giving the court's Instruction 6 instead of Robert's proposed Instruction 1 and in giving the trial court's Instructions 9 and 10. Further, viewing the in-

structions as a whole, we determine that the jury was not properly instructed and probably would have returned a different verdict had they been properly instructed. We further determine that parol evidence was properly admissible to show Schramm's accommodation character only, not to show his representative capacity. Nor should parol evidence have been admitted with respect to the negotiations for the assignment. It was an unambiguous contract and the defense raised was a sham.

Finally, Robert predicates reversible error on the trial judge's failure to recuse himself pursuant to an oral motion made on the morning of the commencement of the trial, immediately prior to jury selection. Robert based his motion on the allegation that the trial court had, on the preceding day, contacted both counsel and "advised them that appellant would not be allowed to receive a judgment in his court." Robert's motion was based on the Code of Judicial Conduct, Canon 3C, which provides, in pertinent part:

A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, *including but not limited to* instances where:

(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding....

SDCL ch. 16-2, Appx. (emphasis added).

The thrust of Robert's motion was twofold: First, that the trial court during the course of pretrial proceedings had ultimately reversed himself on an earlier decision to exclude all parol evidence as to the assignment agreement; and, second, the telephonic statement that based on the facts as the court understood them, Robert could not receive a judgment. In this regard, Robert urges that any alleged facts were simply in the form of affidavits in support of Schramm's motions. Robert summed up his argument on the motion "it appears to us that the court is not approaching the trial of the issue before the jury in an impartial manner as the court has indicated it has essentially made up its mind and that

the plaintiff shall not recover. Regardless of what the outcome of the jury is."

The trial judge responded on the record. He first noted that he was not acquainted with any of the parties, Robert or Victor Wang or Schramm and that he had good experiences with Robert's counsel. He acknowledged that he had telephoned counsel. As he said:

I just felt that I should explain to counsel my feelings upon this case based completely upon the facts as I understand them prior to this trial and it was based completely upon what the court feels that the law is that applies to those facts and I indicated to counsel that if these were the facts that were brought out at this trial, that in all probability, the court would direct a verdict for the defendant.... [T]he words the plaintiff isn't going to get judgment may have been the way I came across, but I didn't mean that personally towards Mr. Wang at all.

Summing up his feelings on the motion, the trial judge stated:

[I]f I felt for a minute that I had a feeling towards either the plaintiff or the defendant that I would hold against them, I wouldn't sit on the case.... I was assigned to handle this case and I see no reason I shouldn't handle it even though I told you the feelings I have concerning the facts as I understand them and the law applicable thereto.

In his brief, Robert suggests that the trial court's prejudice and bias were demonstrated in the following particulars: (1) The reversal of earlier rulings so as to permit otherwise inadmissible parol evidence to influence the jury; (2) The giving of Instruction 6 to create a defense of representative capacity for Schramm; and (3) The reservation of the ruling on Schramm's motion for a directed verdict so that the trial court could take the case from the jury in the event they found for Robert even in the face of the instruction.

We comment first on the last item. We note that our present rules specifically provide for such procedure as the trial court followed. SDCL 15-6-50(b) states:

"Whenever a motion for a directed verdict made at the close of all the evidence is denied *or for any reason is not granted,* the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." (Emphasis added.)

Under a former statute, SDC 33.1314[3], and our decision in *Brandsrud v. Beattie Steinborn Co.,* 74 S.D. 224, 50 N.W.2d 639 (1951), the trial court could not reserve a decision on a motion for a directed verdict for disposition after submitting the case to the jury. In *Brandsrud,* we distinguished our statutory provision from that of several other states and particularly from Rule 50(b) of the Federal Rules of Civil Procedure. We have since adopted the 50(b) rule and therefore the trial court's actions were totally appropriate.

 With respect to the other two items, we are willing to accept the trial court's statement to the effect that if it felt that it would rule for or against either party because of any feelings it had toward them, it would not sit on the case. Nevertheless, in reviewing the record, particularly the tenor of the instructions, we are left with a feeling that the trial court at least unconsciously leaned too far toward the defense. Its statement during settlement of Instruction 9 is particularly relevant. The court said that it didn't believe that Schramm would have signed the agreement if he had known that he would incur personal liability. We can empathize with that feeling. However, the situation did not arise due to Robert's fault. Robert purchased the note from the RFCU for $8,000 and he testified that he was aware of Schramm's signature as co-maker on the note prior to the purchase. The burden of relieving Schramm from the dire circumstances he had been placed in fell upon the RFCU. It responded with a half-hearted attempt to negotiate a repurchase of the note by refunding Robert's payment. The RFCU did not start an action for rescission. When this action was started, they did not attempt to intervene and set up rescission by cross-complaint. On remand, we suggest that the case be reassigned for any further proceedings.

We reverse and remand for a new trial.

WUEST, C.J., HENDERSON and FOSHEIM, JJ., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

---

3. SDC 33.1314 provided: "The Court shall decide the issue raised by such motion before submitting the case to the jury."