James C. THOMAS, Plaintiff
and Appellee,

v.

Daniel McNEILL, Defendant
and Appellant.

Nos. 16417, 16431.

Supreme Court of South Dakota.

Considered on Briefs April 26, 1989.

Decided Nov. 22, 1989.

Timothy J. Becker of Banks, Johnson, Johnson, Colbath & Huffman, P.C., Rapid City, for plaintiff and appellee.

Thomas E. Brady of Richards, Hood & Brady, P.C., Spearfish, for defendant and appellant.

MILLER, Circuit Judge.

### ACTION

Daniel McNeill (McNeill) appeals from the trial court's grant of summary judgment to James Thomas (Thomas) on his complaint against McNeill for recovery upon a promissory note. McNeill further appeals from the trial court's judgment against him on his counterclaim for reformation of the promissory note. We examine the latter in light of Thomas' request to review the trial court's denial of that portion of his motion for summary judgment regarding McNeill's counterclaim for reformation. We affirm in part, reverse in part.

### FACTS

The parties business contacts began in 1970 when McNeill was president and manager of Western Homes Incorporated (Western Homes). In that year, Thomas was hired as a salesman for a brief period. The parties again had a business relation-

ship in 1974 or 1975 when Thomas started his own business in which Western Homes invested. Then, in May of 1978, Western Homes was working to develop a mobile home park in Alliance, Nebraska, to be known as Southtown Park. Thomas wanted to invest in this project.

The agreement with the City of Alliance, Nebraska (City of Alliance), called for a purchase price of $100,000.00 for the land on which the park was to be located. Thomas was to put up one-third of this sum, with McNeill and the other shareholder of Western Homes putting up the remaining two-thirds. Thomas contributed $3,333.34, his portion of the earnest money payment, which was deposited into the account of Western Homes. It was at this time that the corporate name of Western Homes was changed to F & M Enterprises (F & M). In July 1978, Thomas contributed the balance of his share of the investment, $30,000.00, and this was deposited into F & M's account. F & M then paid the full $100,000.00 to the City of Alliance to purchase the land.

In December 1978, or January 1979, it was decided that the project was not feasible. Pursuant to the agreement with the City of Alliance, the land was sold back to the city and the city returned the $100,000.00 purchase money to F & M. The parties decided that the entire $100,000.00 would be used for another investment.

While Thomas, McNeill and the other individual were looking for another investment venture, the $100,000.00 was placed in a certificate of deposit under F & M's name. F & M then gave Thomas a promissory note dated January 31, 1979, to reflect his one-third interest in the $100,000.00 certificate of deposit. This note was signed by McNeill showing his representation of F & M. In May of 1979 these funds were used to purchase a mobile home business which was named Nu-Trend Homes, and which was to be a business owned by F & M.

Nu-Trend Homes lost money and McNeill and Thomas had some personal differences. These factors led to a discussion about terminating the business rela-

tionship. McNeill offered to buy out Thomas' interest in F & M and Thomas agreed if he could receive $5,000.00 cash immediately and a note for the balance of the $28,300.00. McNeill accomplished the buy-out on September 15, 1980, by borrowing $5,000.00 under the corporate name, issuing a Nu-Trend check on the Nu-Trend account to Thomas in the amount of $5,000.00, and executing a promissory note to Thomas for $28,300.00 with interest at twelve percent per annum. McNeill signed this September 15, 1980, promissory note (September Note). It neither named F & M, nor showed that McNeill signed in any type of representative capacity for F & M. Other than McNeill's signature, the blanks provided on the note as to who promises to pay, where, and when, were left blank.

For a number of months after September 15, 1980, Thomas received interest payments on the September Note through Nu-Trend Home's business checks. There were no payments of principal on this note. After March of 1983, Thomas no longer received interest checks. In February, 1984, F & M stopped selling mobile homes and began to liquidate assets.

Thomas was scheduled to have surgery in the fall of 1984 and wanted his business affairs to be current before this time. He asked McNeill to execute a new promissory note reflecting the current debt with accrued interest, since only a portion of the interest payments and none of the principal payments had been made on the September Note. On October 5, 1984, McNeill executed a new promissory note to Thomas in the amount of $33,677.00, with interest at twelve percent per annum. Like the September Note, the October 5, 1984, note (October Note) was signed by McNeill without indication of any representative capacity, and the blanks provided on the note as to who promises to pay, where, and when, were left blank. There were no payments of interest or principal on the October Note.

In February 1987, Thomas brought suit against McNeill seeking payment on the October Note. McNeill answered by affirmatively denying personal liability on

the note, alleging that the note was an obligation of F & M, and further setting forth the affirmative defenses of failure of a condition precedent, mistake, and lack of consideration. McNeill additionally counterclaimed against Thomas alleging that there was a mutual mistake of the parties or a mistake of McNeill which Thomas knew or suspected, thereby allowing the court to revise the October Note. In counterclaiming, McNeill further realleged the affirmative defenses of his answer. Thomas replied with a general denial and affirmatively alleged that the October Note superseded all the oral negotiations or stipulations preceding or accompanying the execution of the promissory note.

The trial court granted Thomas' motion for summary judgment except the portion of the motion that went to McNeill's counterclaim for reformation which was denied. The trial court found as a matter of law that the October Note was a personal obligation on the part of McNeill. However, a court trial was held on McNeill's counterclaim for reformation. The trial court found McNeill personally liable on the October Note.

## ISSUE I

DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT TO THOMAS IN FINDING THAT THERE WAS NO MATERIAL QUESTION OF FACT AS TO WHETHER McNEILL WAS PERSONALLY LIABLE UPON THE PROMISSORY NOTE?

The standard of review of the grant or denial of a summary judgment is well established:

In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 164 (S.D.1987). The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party.

*Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. *Ruane v. Murray*, 380 N.W.2d 362, 364 (S.D.1986). Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper. *Weatherwax v. Hiland Potato Chip Co.*, 372 N.W.2d 118, 120 (S.D.1985); *Ruple v. Weinaug*, 328 N.W.2d 857, 859-60 (S.D.1983).

*Pickering v. Pickering*, 434 N.W.2d 758, 760-61 (S.D.1989).

McNeill contends that there exist material questions of fact about whether the parties intended to bind F & M rather than himself individually to payment of the note. He contends that the trial court should have allowed him to adduce parol evidence to show the intention of the parties. Thomas claims that the intention of the parties is clear by looking at the October Note itself. Thomas contends that under the facts presented the trial court could look no further than the note.

The issue presented falls within the purview of the Uniform Commercial Code, and in particular within SDCL 57A-3-403(2)(a), which provides in pertinent part:

(2) An authorized representative who signs his own name to an instrument

(a) Is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

McNeill, however, contends that SDCL 57A-3-403(2)(b) controls in this controversy. That section provides that an authorized representative who signs his own name to an instrument:

(b) Except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in

a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

The deposition testimony of McNeill revealed that he signed the October Note and that the October Note neither named any person whom McNeill allegedly was representing nor showed that McNeill signed in any type of representative capacity. An examination of the note itself clearly reveals these undisputed facts.

This court has not addressed this particular fact situation but it has had the opportunity to apply SDCL 57A–3–403(2)(a) to litigation brought by a subsequent holder of a note against an original party to that note who had signed without indicating a representative capacity. *Wang v. Wang,* 393 N.W.2d 771 (S.D.1986). In *Wang* we held that the signer was liable to the subsequent holder regardless of the original parties intentions, and we further stated:

We grant that there is some authority that, *in an action between the original parties to the note,* the intention to bind the principal instead of the agent may be relevant. In this case, however, the action is brought by a subsequent holder, not by an original party. We, therefore do not reach that specific issue at this time.

*Wang, supra,* at 774.

The opportunity has now arisen for us to reach a decision on that specific issue.

Courts all across the country have granted summary judgment to a plaintiff such as Thomas when presented with a similar factual scenario and when the state has adopted the Uniform Commercial Code (U.C.C.), as South Dakota has.* *Schwartz v. Disneyland Vista Records,* 383 So.2d 1117 (D.C.Fla.1980), Supreme Court of Florida petition for review denied, 392 So.2d 1378 (1980); *Bostwick Banking Company v. Arnold,* 227 Ga. 18, 178 S.E.2d 890 (1970); *Barden & Robeson Corp. v. Ferrusi,* 52 A.D.2d 1061, 384 N.Y. S.2d 596 (1976); *Farmers & Merch. Nat.*

*Bank of Hatton v. Lee,* 333 N.W.2d 792 (N.D.1983); *Mid–America Real Estate & Inv. Corp. v. Lund,* 353 N.W.2d 286 (N.D. 1984); *Marine Midland Bank v. DiMarzo,* 57 A.D.2d 733, 395 N.Y.S.2d 791 (1977); and *Giacalone v. Bernstein,* 348 So.2d 679 (D.C.Fla.1977).

In *Wang, supra,* this court cited *Mid–America Real Estate & Investment Corp., supra,* for the proposition that "[w]here the instrument does not name the principal or indicate the representative capacity, the signature of an agent personally obligates the agent and parol evidence is inadmissible to disestablish his obligation." 393 N.W.2d at 773, 774. The North Dakota Supreme Court in *Mid–America, supra,* further stated that:

'If, under 3–403(2)(a) [U.C.C.], the agent merely signs his own name, he is personally liable on the instrument, but his principal is not. Even if the person taking the instrument knows that the agent is signing in a representative capacity, the agent cannot introduce parol evidence to show that his signature was made for another.'

353 N.W.2d at 289 (*quoting* White & Summers, *Uniform Commercial Code* § 13–4, at 493 (2d Ed.1980)).

At the time this court cited the *Mid–America* decision in *Wang, supra,* the North Dakota Supreme Court had already applied U.C.C. 3–403(2)(a) to an action between the original parties and precluded the introduction of parol evidence. *Farmers & Merchants National Bank of Hatton, supra.* We now follow that lead and the lead of other precedent explaining the rational of U.C.C. § 3–403(2)(a).

Official Comment 3 to U.C.C. § 3–403 makes clear the drafter's intention that parol evidence be inadmissible to disestablish obligations such as the October Note. Official Comment 3 of U.C.C. § 3–403 indicates the results various signatures have upon the individual liability of an agent. We will paraphrase this example to show the same in this case.

---

* In SDCL 57A–3–403 South Dakota has adopted verbatim the language of U.C.C. § 3–403. Any reference to U.C.C. § 3–403 is a reference to identical language of SDCL 57A–3–403.

Assuming that F & M is a principal and McNeill is its agent, a note might, for example, bear the following signatures affixed by the agent:

(a) "F & M," or

(b) "McNeill," or

(c) "F & M by McNeill, Agent," or

(d) "McNeill, Agent," or

(e) "F & M McNeill."

A signature in form (a) does not bind McNeill if authorized. A signature in (b) personally obligates McNeill, and parol evidence is inadmissible under SDCL 57A–3–403(2)(a) to disestablish his obligation. The unambiguous way to make clear that McNeill is signing in his representative capacity without personal liability is to sign as in (c). Any other definite indication is sufficient, as where the instrument reads "F & M promises to pay" and it is signed "McNeill, Agent." McNeill is not bound if he is authorized. *See* U.C.C. § 3–403, Official Comment 3.

U.C.C. § 3–403(2)(b) adopts the New York's minority rule, *Megowan v. Peterson*, 173 N.Y. 1, 65 N.E. 738 (1902), in cases such as (d); and adopts the majority rule in cases such as (e). "In both cases the section admits parol evidence in litigation between the immediate parties to prove signature by the agent in his representative capacity." U.C.C. § 3–403, Official Comment 3, 2 U.L.A. 312 (1977).

White and Summers, *supra*, § 13–5 at 496 explains the differing results under U.C.C. § 3–403(2)(a) and (2)(b):

When the plaintiff who sues the agent personally is one who dealt directly with the agent, and the signature either names the principal or indicates representative capacity, section 3–403(2)(b) permits the agent to introduce parol evidence of his agency status to avoid personal liability.... Evidently the Code draftsmen believed that anyone permitted to prove his agency by parol should offer as an entry fee some extrinsic evidence that he acted in a representative capacity. Accordingly, parol evidence is not admissible when the agent merely signs his own name but does not indicate either the fact of representation or the name of his principal.

*See*, White & Summers, *Uniform Commercial Code* § 13–4 at 631 (3d Ed.1988). The authors go on to explain that "Section 3–403(2)(a) is not modified by the 'except as otherwise established' language found in section 3–403(2)(b)." *Id.*

*Mid–America, supra,* also sets forth the rationale behind the rule:

Subsection (2)(a) is, in effect, an extension of the general contract rule that a court may not consider extrinsic evidence to vary the language of an unambiguous contract. [citation omitted]. If the name of the principal appears on the instrument or the signature indicates a representative capacity, it creates an ambiguity regarding the capacity of the signature. In this situation there is still a presumption of personal liability, but under subsection (2)(b) extrinsic evidence is admissible to establish representative capacity. Where the instrument neither names the principal nor indicates representative capacity, however, there is no ambiguity regarding the signature and extrinsic evidence is inadmissible under subsection (2)(a).

McNeill cites *Viajes Iberia, S.A. v. Dougherty*, 87 S.D. 591, 212 N.W.2d 656 (1973) for his argument that the present case can be argued under SDCL 57A–3–403(2)(b). The *Dougherty* case is distinguishable from this case because the check in *Dougherty* included the company name along with the defendant's bare signature. This created a facial ambiguity much like example (e) above, and therefore fell under the purview of SDCL 57A–3–403(2)(b). The October Note, like example (b) above, neither names the person allegedly represented by McNeill nor shows that he signed in any type of representative capacity. In such a case there is no ambiguity created by the signature and the trial court can only look within the four corners of the promissory note to determine the intent of the parties. *Mid–America, supra.*

Taking the undisputed facts of this case, the trial court had a definite basis, SDCL 57A–3–403(2)(a), upon which to grant

Thomas' motion for summary judgment on his complaint and correctly found that there existed no genuine issue of material fact regarding McNeill's liability on the October Note. We affirm.

## ISSUE II

DOES SDCL 57A–3–403(2)(a) PRECLUDE THE INTRODUCTION OF PAROL EVIDENCE TO DISESTABLISH A PERSONAL OBLIGATION UNDER THE EQUITABLE REMEDY OF REFORMATION WHEN THE SIGNATURE ON A NOTE NEITHER NAMES THE PERSON REPRESENTED NOR SHOWS THAT THE REPRESENTATIVE SIGNED IN A REPRESENTATIVE CAPACITY?

■ We next examine the parties' contentions relating to the issue of reformation under South Dakota Law.

It is Thomas' position that if a factual scenario such as is found in this case fits squarely within SDCL 57A–3–403(2)(a), parol evidence cannot be introduced by the signer of the promissory note to disestablish his personal obligation, even under the equitable remedy of reformation. Thomas presented this argument to the trial court through his motion for summary judgment. The trial court granted Thomas' motion for summary judgment except for McNeill's reformation counterclaim. The trial court therefore let McNeill present parol evidence to the court in an attempt to prove his entitlement to reformation of the October Note. Prior to any testimony being received at trial, Thomas made a continuing objection.

McNeill submits that if his signature on the promissory note results in a determination of personal liability, as it has, it was not the intention of the parties and there exists mutual mistake. In the alternative, McNeill argues that he was mistaken and Thomas knew or suspected this mistake, but remained silent. He contends that, under the facts of this case, an action for reformation was allowed, SDCL 21–11–1, and the trial court's findings of fact and

conclusions of law under that theory must be set aside as clearly erroneous.

SDCL 21–11–1 provides, in part:

When through . . . mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intentions of the parties, it may be revised on the application of a party aggrieved so as to express that intention . . .

We address Thomas' contention first to determine whether we even have to reach the issue raised by McNeill.

South Dakota has not addressed the issue of whether or not parol evidence is admissible under SDCL 57A–3–493(2)(a) when a defendant has counterclaimed for revision of a promissory note. At least two other appellate courts have faced this issue however. *See, Schwartz, supra,* and *St. Regis Paper Co. v. Wicklund,* 93 Wash.2d 497, 610 P.2d 903 (1980).

The *Schwartz* court, reviewing an identical adoption of U.C.C. 3–403(2)(a), discussed a defendant's counterclaim for reformation and his attempt to admit parol evidence and said:

We, therefore, adopt the position of the U.C.C. Comment to Section [3–403] and hold that parol evidence is inadmissible in situations falling under section [3–403(2)(a)], thus rendering reformation unavailable in those situations. To hold otherwise would emasculate the clear legislative intent to create certainty and stability in the law with regard to commercial paper used in everyday business transactions.

383 So.2d at 1120.

The *St. Regis, supra,* court came to an opposite conclusion from that of the *Schwartz* court and found that parol evidence is admissible to prove that a promissory note should be reformed under U.C.C. 3–403(2)(a). The *St. Regis* court relied on U.C.C. 1–103 and its Official Comment 1 and held that:

There is nothing in [3–403] which explicitly—or indeed even by reference—states the equitable remedy of reformation because of mutual mistake is no longer

available. Neither by case law nor by the statutes of the same has reformation because of mutual mistake been eliminated. The defense was raised properly by defendant and parol evidence as to mutual mistake was properly admitted by the trial court.

610 P.2d at 906.

There is no express language found in U.C.C. § 3–403 which states that the equitable remedy of reformation because of mutual mistake is no longer available. However, the statute, its official comments, and case law makes it clear that parol evidence is wholly inadmissible to disestablish a payor's personal obligation under U.C.C. § 3–403(2)(a). The prohibition against parol evidence extends also to a counterclaim for reformation when U.C.C. § 3–403(2)(a) controls. *Schwartz, supra.*

Construction of SDCL 57A–3–403 consistent with the *Schwartz* court complies with SDCL 2–14–13. That statute provides:

> Whenever a statute appears in the code of laws enacted by § 2–16–13 which, from its title, text, or source note, appears to be a uniform law, it shall be so interpreted and construed so as to effectuate its general purpose to make uniform the law of those states which enact it.

This court is aware of South Dakota case law which allows parol evidence to be used to prove mistake for purposes of revision pursuant to SDCL 21–11–1. But, "terms of a statute relating to a particular subject will prevail over general terms of another statute." *Meyerink v. Northwestern Public Service Co.,* 391 N.W.2d 180, 184 (S.D. 1986). In this case, the specific provisions of SDCL 57A–3–403 address the exact issue before the court concerning a promissory note, and therefore prevail over the general provisions of SDCL 21–11–1.

■ McNeill argues that when the September Note was executed, the Nu–Trend check for $5,000.00 was an agreement executed along with it as part of the same transaction and therefore is admissible un-

der SDCL 57A–3–119 as parol evidence. Assuming without deciding that this check is an agreement contemplated by SDCL 57A–3–119, we would hold that it is not admissible evidence.

An argument such as McNeill is making was made to the court in *Mid–America, supra.* That court, construing a statute identical to SDCL 57A–3–119, held that such a statute does not permit consideration of extrinsic evidence to determine the capacity of a party's signature on a note because the more specific provisions of U.C.C. § 3–403 prohibit such consideration. The court held:

> In construing statutes, a special or more specific provision must prevail over general provisions relating to the same subject matter, absent a manifestation of legislative intent to the contrary. Section [3–403(2)(a) ], which provides that a person who signs an instrument who does not name his principal or indicate a representative capacity is personally obligated on the instrument, is a specific provision which prevails over the more general provisions of section [3–119]. (citations omitted).

353 N.W.2d at 289–90. The rule set forth in *Meyerink, supra,* allows this court to hold the same.

The October Note neither names the person allegedly represented by McNeill nor shows that he signed in any type of representative capacity. The meaning and legal effect of McNeill's signature is crystal clear under SDCL 57A–3–403(2)(a). With these simple facts, Thomas demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. Had the law been correctly applied, the trial court had no basis whatsoever to deny Thomas' motion for summary judgment regarding McNeill's counterclaim for reformation. As a matter of consistency the issues should not have been separated and the trial court erred in so doing. We reverse the trial court's denial of that portion of

Thomas' motion for summary judgment regarding McNeill's counterclaim for reformation and therefore need not reach McNeill's second contention.

WUEST, C.J., and MORGAN, SABERS and MILLER, JJ., concur.

MILLER, Circuit Judge, for HENDERSON, J., disqualified.